IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

KRISTOPHER KOLEA & JOHN KOLEA,
JR. t/a K-WOOD, LP,

                Plaintiffs,

      v.

CNA INSURANCE COMPANIES d/b/a
TRANSPORTATION INSURANCE
COMPANY,

                Defendants.

Civil Action
No. 05-5407 (JBS)

**MEMORANDUM OPINION**

**Simandle, District Judge:**

    This matter is before the Court on the motion for partial summary judgment by Defendant CNA Insurance Companies, doing business as Transportation Insurance Company ("CNA" or "Defendant") for partial summary judgment.  For the following reasons, the Court shall deny the motion for partial summary judgment:

    1.  Defendant seeks to preclude Plaintiff (Kristopher Kolea and John Kolea, Jr., a New Jersey partnership trading as K-Wood, LP) from recovering on an insurance policy for damage to the insured structure, which was located at 347 South Broad Street, Woodbury, New Jersey ("the subject property").  Defendant does not seek to preclude Plaintiffs' claim for lost rents.

    2.  The issue is whether the policy on the subject property, which Plaintiff still owned at the time of the alleged damage, permits Plaintiff to recover on the policy, despite a

lucrative sale and a lack of diminution in any market value of the property.

3.   This Court has subject matter jurisdiction over this contract dispute pursuant to 28 U.S.C. § 1332.  Plaintiff Kristopher Kolea and John Kolea, Jr., t/a K-Wood, LP. is a New Jersey Limited Partnership whose members are Pennsylvania citizens and who have a primary business address in Conshohocken, Pennsylvania 19428.  Defendant is an entity with an address of CNA Plaza, 333 S. Wabash Avenue, Chicago, Illinois 60604.  Plaintiff is a citizen of New Jersey and each of its members are citizens of Pennsylvania and the defendant is a citizen of the State of Illinois.  The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of interest and costs.

4.   The facts are not in dispute. Plaintiff owned property located at 347 South Broad Street, Woodbury, New Jersey upon which Defendant had issued a general liability policy of insurance under its "Tailored Commercial Program Plus Package" to Plaintiff for a policy period of November 1, 2004 through November 1, 2005 ("the policy").

5.   On or about February 17, 2005, at 7:45 A.M. an adjacent building, located at 337 South Broad Street, had a roof and second floor structure failure.  That adjacent building was later

ordered demolished.  The collapse of the adjacent building allegedly damaged the subject property.

6.    Prior to that date, James Kolea, on behalf of Plaintiff K-Wood, LP, entered into negotiations with Mark Investment, Inc. for the sale of the subject property.  Those parties entered into a sale agreement for the subject property on the date of the collapse of the adjacent building for the purchase price of $775,000.  The agreement was entered into after the alleged damage to the subject property.  No repairs or improvements were made to the subject property prior to consummation of the sale, but any damage to the subject property did not reduce the negotiated price for sale because the purchaser was apparently not interested in maintaining the structure on the property.  On or about September 27, 2006, the deed for the subject property was transferred from K-Wood to Mark Investment, pursuant to the February 17, 2005 sale agreement.

7.    The policy on the subject property provided $234,500 of coverage for the property, with a $1,000 deductible.

8.    The insurance policy at issue states, in relevant part:

**A. COVERAGE**

We will pay for direct physical loss of or
damage to Covered Property at the Premises
described in the Declarations caused by or
resulting from any Covered Cause of Loss.

**D. ADDITIONAL COVERAGES**

3

The following coverages are added, but do not increase the Limits of Insurance provided in this Coverage Part.

**1. Collapse**
The term Covered Cause of Loss includes the Additional Coverage - Collapse as described and limited in l.a through 1.e below.

**a. With Respect to buildings:**
   (1) Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose;
   (2) A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse;
   (3) A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building;
   (4) A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

[. . .]

**E. LOSS CONDITIONS**
. . .
**4. Loss Payment**
a. In the event of loss or damage covered by this Coverage Form, at our option, we will either:
   (1) Pay the value of lost or damaged property;
   (2) Pay the cost of repairing or replacing the lost or damaged property, subject to b. below;
   (3) Take all or any part of the property at an agreed or appraised value; or

4

> (4) Repair, rebuild or replace the
> property with other property of like
> kind and quality, subject to b. below
>
> [. . .]
>
> b. We will not pay you more than your
> financial interest in the Covered Property.

9.    Summary judgment is appropriate when the materials of
record "show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment as a
matter of law."  Fed. R. Civ. P. 56(c).  In deciding whether
there is a disputed issue of material fact, the court must view
the evidence in favor of the non-moving party by extending any
reasonable favorable inference to that party; in other words,
"the nonmoving party's evidence 'is to be believed, and all
justifiable inferences are to be drawn in [that party's] favor.'"
Hunt v. Cromartie, 526 U.S. 541, 552, 119 S. Ct. 1545, 143 L. Ed.
2d 731 (1999) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S.
242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).  "Rule 56(c)
mandates the entry of summary judgment, after adequate time for
discovery and upon motion, against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial. In such a situation, there can be
'no genuine issue as to any material fact,' since a complete
failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial."
Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this
case the parties agree on the material facts and merely ask the
Court to interpret the insurance contract, given these facts, and
looking to New Jersey law to determine whether Plaintiff is
entitled to recover any money on its insurance agreement with
Defendant.

10.  Defendant argues that Plaintiff is not entitled to
recover under a policy of insurance for damage to a structure
that does not diminish the market value of that structure.
Plaintiff argues that it is entitled to recover because it had an
insurable interest in the subject property at the time the damage
was sustained, regardless that Plaintiff subsequently sold the
property to a third-party without any diminution of the purchase
price.  The parties agree that under New Jersey law, an insured
has an insurable interest in property so long as the insured has
a reasonable expectation of deriving pecuniary benefit from
preservation of the property or would suffer a direct pecuniary
loss from its destruction.  (See Def. Br. at 8) (citing Miller v.
N.J. Ins. Underwriting Ass'n, 82 N.J. 594 (1980)). Defendant
argues that Plaintiff has failed to show this insurable interest.

11.  Defendant further argues that a certain policy
exclusion prevents Plaintiff's recovery for the structural
damage.  The provision that states, "We will not pay you more

6

than your financial interest in the Covered Property," applies here because Plaintiff's financial interest was not diminished by the alleged damage.

12. Finally, Defendant distinguishes this case from cases in which the sale of the property occurred prior to the damage to the property. In this case, Defendant notes, the sale occurred after the damage and the damage did not affect the sale price. (Def. Br. at 9-10.)

13. Plaintiff notes that it is well-settled that an insured must sustain a loss to covered property before an insured can recover on an insurance policy, but argues that the key issue is when to measure that loss. Plaintiff argues that the time of damage to the covered property is the time for valuing loss. (Pl. Br. at 10.) A subsequent sale, Plaintiff argues, should not alleviate the insurance company of its obligation to pay for a covered loss, given that it contracted to do so and Plaintiff paid the necessary premiums to provide such coverage.

14. Because the Court finds that it should interpret the insurance policy according to the reasonable expectations of the parties at the time they formed the contract, because Plaintiff had an insurable interest in the property at the time the damage occurred, and because there is no argument that the damage at issue falls outside the type of damages covered by the policy, the Court must deny Defendant's motion for summary judgment.

Although it is Plaintiff's burden to prove the value of the property and the damage to it, the Court interprets the contract to cover damage that occurred to the structure, regardless of the Plaintiff's ability to sell it for more than its insured value and with no diminution in price on account of the damage.

15.  New Jersey law requires this Court to determine coverage according to the financial interests in the property on the date of the covered event. For example, in P.R. DeBellis Enter. v. Lumbermans' Mut. Cas. Co., 77 N.J. 428 (1978), the insured had purchased property at a tax sale subject to the original owner's right to redeem the property.  The insured also purchased fire insurance on the property.  A fire occurred and later, the original owner redeemed his right to own the property. The redemption price was not effected by the fire.  The New Jersey Supreme Court held, nevertheless, that the insured was entitled to insurance coverage and to collect for the damage to the property.  The court explained:

> [T]he defendant [(insurer)] had contemplated that plaintiff would be entitled to at least the value of the interest it held on the day of the fire. Defendant had accepted a premium for an exposure of a far greater amount. Defendant had contracted to incur its obligation without knowledge of the existence of the holder of the redemption interest and in any event with no assurance that redemption would occur. In fact, one would have thought that destruction of the premises would have made redemption even more unlikely. The contention that redemption, subsequent to the casualty, made the plaintiff whole and

8

> therefore recovery should be denied overlooks
> the underlying insurance contract under which
> the defendant agreed for a premium to pay
> plaintiff the actual cash value of the
> property. To deny any recovery would create a
> windfall for the insurance company and ignore
> what we conceive to be the reasonable
> expectation of the parties.

<u>De Bellis</u>, 77 N.J. at 437-38.

16. <u>De Bellis</u>'s logic is directly on point. When applying New Jersey law, this Court must predict what the New Jersey Supreme Court would do if presented with the question at hand. <u>Kowalsky v. Long Beach Twp.</u>, 72 F.3d 385, 388 (3d Cir. 1995). This Court predicts that the New Jersey Supreme Court would extend the rule of <u>De Bellis</u> from redemptions to market sales. Just as in <u>De Bellis</u>, here Plaintiff had an insurable interest in the property. (In this case, the interest was even greater, because Plaintiff owned the whole property, not subject to any other right.) Also, as in <u>De Bellis</u>, Plaintiff transferred ownership in the property to someone else for a price that was not affected by the damage. Thus, as in <u>De Bellis</u>, as long as the damage was of the type insured by the contract and no other exclusion applies, there is no impediment, under New Jersey law, to Defendant paying on the contract.

17. Defendant notes that the <u>De Bellis</u> decision did not preclude looking at what happens after the accident or fire to determine whether coverage is appropriate. But it did so in order to aid determination of (1) the insured's insurable

9

property interest, i.e., how much of the property he owned and
(2) what the parties intended when they entered into their
insurance agreement.  The Court said that coverage would depend
upon the reasonable expectation of the insured.  "That being the
key criterion, the amount of recovery may not necessarily be
limited to the precise situation of the insured as of the date of
the casualty and subsequent events may be significant in
determining the insured's interest." Id. at 436.  The Court
noted that courts should interpret the disputed loss provision
according to what the parties expected when they entered the
agreement. Id.

   18.  That being said, the De Bellis Court used this
"expectation of the insured" criterion to determine what the
value of the insured's ownership interest was in the property,
because that was unclear, as it was subject to the right of
redemption.  The value of that interest was essential to
determine in that case because an insured can only be covered up
to the value of that interest for a fire under New Jersey law.
Otherwise, the Court noted, an individual would be permitted to
insure property for more than its value, which would encourage
"fraud and speculation." Id.  A similar policy is embodied here
in the policy provision which says, "We will not pay you more
than your financial interest in the Covered Property."  Plaintiff
is not seeking to recover in insurance more than its financial

10

interest in the property.  The insured seeks, at most, to recover
for property damage within the policy's coverage, irrespective of
the fact that the damage did not suppress the ultimate selling
price for the insured property.

19.  Thus, although the "expectation of the insured" test is
useful in this context, De Bellis is mostly applicable to
situations in which it is not clear whether the insured had an
interest in the property equal to the amount of the value of the
whole property.  For example, Couch on Insurance cites as support
for the general rule that

> the insured with a limited interest in the
> property insured may not recover the full
> value, and in most of the cases where it is
> apparent that to allow the insured to recover
> the full value of the property destroyed,
> within the amount of the policy, would enable
> him or her to realize a profit on his or her
> insurance, the courts have limited the
> recovery to the value of the actual interest
> of the insured in the property destroyed.

12 Lee R. Russ & Thomas F. Segalla, Couch on Insurance § 175:57
(3d ed. 2007).  Thus, for example, a part-owner cannot recover a
full measure of the value of destroyed property.

20.  In this case, Plaintiff did not have a limited or
contingent interest in the property either at the time of forming
the insurance contract or at the time of the damage.  This is not
a situation in which an individual seeks to recover on an
insurance policy for more than the value of the property owned.
Cf. Burns v. California Fair Plan, 152 Cal. App. 4th 646, 653 (2d

Dist. 2007) ("If an insured's interest 'extends to the whole of the subject matter of the property,' the insured may recover up to the value of the property, subject to any policy limitation. However, if the interest of the insured is less than the whole of the property, 'his right is limited, not by the value of the property, but by the value of his interest.'" (citation omitted)).  Indeed, Defendant claims the property is more valuable than the insurance procured.  At the time the property was damaged, there is no dispute that it was worth more, as determined by the market, than the amount for which Plaintiff insured it.

    21.  As for the policy provision that states, "We will not pay you more than your financial interest in the Covered Property," the Eastern District of Pennsylvania interpreted an identical policy provision exactly as the Court does here.  See Nationwide Mut. Fire Ins. v. Nationwide Furniture, 932 F. Supp. 65 (E.D. Pa. 1996).  Although that case involved Pennsylvania law, the principles are the same as those the Court draws from New Jersey law, and thus the Court finds the case persuasive.

    22.  In Nationwide, fire damage reduced the purchase price of an insured building, but the Court said the price of sale was not to be used to offset the insurable loss.  According to Eastern District of Pennsylvania court, the insurance company owed the full amount due under its policy on the date of the

fire.  The court also explained that the same reasoning would apply if the value of the property increased after the covered loss, as it did here.

> Nationwide Insurance further contends that we must cap [the insured's] recovery at $112,500, the difference between the $262,500 [(the value of the property before the fire)] and the $150,000 ultimately received from the buyer in January, 1995 under a new agreement of sale. This argument is without merit. The first agreement of sale was terminated in September, 1994 and a new deal was not struck until November of that year. [The insured's] financial interest, however, on April 19, 1994, the date of the fire, was $262,500, minus any of the purchase price that had already been paid. As far as Nationwide Insurance is concerned, we must freeze the picture as of that date. We apply the language of the insurance contract to the facts as they existed at that point in time. Whatever happens to the seller's financial interest thereafter is of no concern to the insurance company. If, for example, the agreement with [the purchaser] had been abrogated the day after the loss and [the insured] later had been able to sell the damaged property to the same or a different buyer for $1,000,000 because it was worth more without the building, the insurance company could not successfully argue that the owner had suffered no loss when the fire took place. We must focus on [the insured's] financial interest at the time of the loss, and not on later events, be they favorable or unfavorable to [the insured].

Id. at 659.

23.  Thus, as in Nationwide, this Court holds that the Plaintiff's financial interest in the property must be measured as it existed on the date of the covered incident.  The value of

the policy shall not be reduced by the value of the subsequent sale.  Under the policy at issue, the insured's subsequent sale of the building for full value does not offset the amount of the covered loss.

24.  For the foregoing reasons, the Court shall deny Defendant's motion for partial summary judgment.  The accompanying Order shall be entered.



**February 13, 2008**                    **s/ Jerome B. Simandle**
Date                                      Jerome B. Simandle
                                         U.S. District Judge

14